**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ASHTEN CLAPPA-KALES and VIOLA HASALA, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

UTZ BRANDS, INC. and UTZ QUALITY FOODS, LLC,

Defendants.

Case No. 1:26-cv-10514

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Ashten Clappa-Kales and Viola Hasala ("**Plaintiffs**"), individually and on behalf of all others similarly situated, bring this class action lawsuit against Defendants Utz Quality Foods, LLC and Utz Brands, Inc., ("**Defendants**" or "**Utz**"), based upon Plaintiffs' personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

## INTRODUCTION

1. Consumers who purchase food products labeled as made with a specific premium oil reasonably expect that the named oil is the sole oil used in the product. This expectation is especially strong when the product prominently features the oil on the front label and the ingredient list on the back identifies the oil as the *only* oil in the product.

2. Defendants manufacture, market, distribute, and sell Boulder Canyon brand potato chips, including products prominently labeled as "Avocado Oil" chips. The labeling and ingredient

statements on these products unambiguously represent to health-conscious consumers that the chips are cooked in avocado oil, and only avocado oil.

3. Avocado oil is a premium cooking oil that commands a significantly higher price than lower-cost vegetable oils such as soybean oils and seed oils. The well-documented health distinctions between avocado oil and seed oils are a primary driver of consumer purchasing decisions.

4. Consumers purchase Boulder Canyon Avocado Oil chip products at a premium price in order to obtain the health benefits associated with avocado oil, including its favorable fatty acid profile, antioxidant properties, and superior heat stability, compared to lower-cost vegetable oils, including seed oils. In choosing Defendants' products, customers reasonably rely on assurances on the package labeling which represent that avocado oil is the one, and only, oil used to make the products.

5. In July 2026, a peer-reviewed scientific study published by researchers at the University of California, Davis, Department of Food Science and Technology, found that 93% of avocado oil–labeled chip products tested, including products sold under the Boulder Canyon brand, exhibited compositional patterns inconsistent with avocado oil and consistent with substitution or dilution using inferior vegetable oils.

6. Despite Defendants representing to consumers that avocado oil is the only oil used to make certain Boulder Canyon chips, testing reveals that these products contain oils other than avocado oil, exhibiting characteristics consistent with substitution of or dilution with vegetable or seed oils. This renders Defendants' labeling false and misleading.

7. Plaintiffs and members of the proposed Class purchased Boulder Canyon Avocado Oil chip products in reliance on Defendants' representations that avocado oil was the one and only

oil used in the chips. Had Plaintiffs and Class members known the products were not exclusively made with avocado oil, or not made with avocado oil at all, they would not have purchased the products and certainly would not have paid a premium price for them.

8. As a direct and proximate result of Defendants' false and misleading labeling, Plaintiffs and Class members have suffered economic harm. They paid a premium price for products they believed were made exclusively with avocado oil, when in fact the products contained cheaper, less desirable oils.

## PARTIES

9. Plaintiff **Ashten Clappa-Kales** lives in Chicago, Illinois and at all times relevant to this case has been a citizen of Illinois.

10. Ms. Clappa-Kales has been regularly buying Boulder Canyon Avocado Oil chip products since 2025 from retail stores—primarily Whole Foods—in Illinois.

11. Specifically, Ms. Clappa-Kales has purchased at least twelve bags of Boulder Canyon Avocado Oil chip products, including Avocado Oil Sea Salt, Avocado Oil Wavy Cheddar Sour Cream, Avocado Oil Thin and Crispy Hickory BBQ, and Avocado Oil Thin and Crispy Cheddar Sour Cream. Each bag cost approximately $0.80 per ounce, which is significantly more expensive than non-premium oil chips.

12. Ms. Clappa-Kales relied on Defendants' labeling representations that the chips were made with avocado oil, and only avocado oil, when making her purchasing decisions. Ms. Clappa-Kales would not have purchased Boulder Canyon chips and certainly would not have paid a premium for them had she known they were not exclusively made with avocado oil.

13. Plaintiff **Viola Hasala** lives in Chicago, Illinois and at all times relevant to this case has been a citizen of Illinois.

14. Ms. Hasala has been buying Boulder Canyon Avocado Oil chip products since at least 2025 from Whole Foods retail stores in Illinois.

15. Specifically, Ms. Hasala has purchased at least nine bags of Boulder Canyon Avocado Oil chip products, including Avocado Oil Wavy Classic Sea Salt, and Avocado Oil Thin and Crispy Classic Sea Salt. Each bag cost approximately $0.80 per ounce, which is significantly more expensive than non-premium oil chips.

16. Ms. Hasala relied on Defendants' labeling representations that the chips were made with avocado oil, and only avocado oil, when making her purchasing decisions. Ms. Hasala would not have purchased Boulder Canyon chips and certainly would not have paid a premium for them had she known they were not exclusively made with avocado oil.

17. Defendant **Utz Brands, Inc.** is a Delaware corporation headquartered in Hanover, Pennsylvania. Utz Brands, Inc. is the parent company that owns, directs, and controls the operations of Utz Quality Foods, LLC, including the manufacture, marketing, distribution, and sale of Boulder Canyon branded products at issue in this action.

18. Defendant **Utz Quality Foods, LLC** is a Delaware limited liability company and indirect wholly owned subsidiary of Utz Brands, Inc. Utz Quality Foods, LLC is the operating entity that manufactures, markets, distributes, and sells Boulder Canyon branded products,

including the avocado oil chip products at issue in this action.[1] Boulder Canyon joined the Utz Brands portfolio in December 2017 through Utz's acquisition of Inventure Foods, Inc.[2]

19. Defendants manufacture, market, distribute, and sell Boulder Canyon brand potato chips, including a line of products prominently labeled and marketed as "Avocado Oil" chips. These products include, but are not limited to: Avocado Oil Classic Sea Salt Kettle Chips, Avocado Oil Wavy Sea Salt Chips, Avocado Oil Thin & Crispy Classic Sea Salt Potato Chips, Avocado Oil Jalapeño Kettle Chips, Avocado Oil Sea Salt & Malt Vinegar Kettle Chips, Avocado Oil Hickory BBQ Kettle Chips, Avocado Oil Spicy Green Chili Kettle Chips, Avocado Oil Jalapeño Ranch Canyon Poppers, Avocado Oil Aged White Cheddar Canyon Poppers, Avocado Oil Wavy Cheddar & Sour Cream Chips, Avocado Oil Wavy Classic Grillo's Pickles Potato Chips, Thin & Crispy Avocado Oil Cheddar & Sour Cream Potato Chips, and Thin & Crispy Avocado Oil Jalapeño Potato Chips.

20. Defendants conduct substantial business in the State of Illinois, including the marketing, distribution, and sale of Boulder Canyon Avocado Oil chip products through retail stores, grocery stores, and online retailers accessible to Illinois consumers.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act of 2005 (CAFA), because (i) there are 100 or more

[1] *See* Press Release, Utz Brands, Inc., Boulder Canyon Launches 'Be for Real' Campaign Celebrating Real Ingredients and Real Moments (2026), https://investors.utzsnacks.com/news/news-details/2026/Boulder-Canyon-Launches-Be-for-Real-Campaign-Celebrating-Real-Ingredients-and-Real-Moments/default.aspx, (identifying "Utz Quality Foods, LLC, a subsidiary of Utz Brands, Inc." as the entity marketing Boulder Canyon products).

[2] *See* Press Release, Utz Quality Foods, LLC, Utz Quality Foods, LLC Completes Acquisition of Inventure Foods, Inc. (Dec. 14, 2017), https://www.foodbusinessnews.net/articles/11020-snack-maker-utz-completes-acquisition.

class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one member of the class and Defendants are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

22. This Court has personal jurisdiction over Defendants because the injuries upon which the Plaintiffs' claims are based occurred or arose out of activities that Defendants specifically engaged in within the State of Illinois. Defendants knowingly and intentionally distributed and sold their Boulder Canyon Avocado Oil chip products in Illinois, and Plaintiffs purchased said products from retail stores located here in Illinois.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of Illinois, including within this District.

## FACTUAL ALLEGATIONS

### A. The 2026 UC Davis Study

24. In 2026, researchers at the University of California, Davis, Department of Food Science and Technology, published a peer-reviewed scientific study titled "Authenticity of avocado and olive oils used as ingredients in commercially processed foods" in the journal *Applied Food Research* (hereinafter, the "**UC Davis Study**").[3]

25. The UC Davis researchers selected 27 processed-food products that listed avocado oil as their only oil, including 14 chip products, 7 mayonnaise products, and 6 salad-dressing

[3] Natalie Lopez-Alvarez et al., *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Res. 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

products.[4] They purchased two separate samples from different production lots of each product, testing a total of 54 avocado oil samples. To determine whether the samples contained authentic avocado oil, the researchers extracted the oil from each sample and examined its fatty acid and sterol profiles, which distinguish avocado oil from less desirable oils such as soybean and canola oil.[5]

26. The overall results were striking: 48 of the 54 avocado oil samples (89%) were not compositionally consistent with authentic avocado oil.[6] Among chip samples, 26 of 28 (93%) were classified as inconsistent with authentic avocado oil.[7] The chemical characteristics of these inconsistent samples were closer to cheaper vegetable oils, and one sample resembled soybean oil.[8]

27. In stark contrast, the researchers also tested 20 processed food samples labeled as made "with authentic olive oil," and 19 of the 20 (95%) were found to be compositionally consistent with authentic olive oil in the finished product.[9] This dramatic disparity demonstrates that the widespread adulteration problem is specific to avocado oil products, not a general consequence of food processing.

28. The UC Davis Study employed rigorous, scientifically validated analytical methodology, including Soxhlet extraction with n-hexane, gas chromatography with flame

---

[4] *Id*. at 2.

[5] *Id*.

[6] *Id*. at 4.

[7] *Id*.

[8] *Id*. at 4, 6.

[9] *Id*. at 4.

ionization detection (GC-FID) analysis of fatty acid methyl esters and sterols, and comparison against Codex Alimentarius international standards for avocado oil composition.[10]

29. To determine if the samples tested were consistent with avocado oil, the UC Davis Study analyzed their fatty acid and sterol profiles. The avocado oil–labeled products found to be inconsistent with authentic avocado oil exhibited the following compositional anomalies: (a) low levels of fatty acids such as palmitic acid (C16:0), palmitoleic acid (C16:1), and cis-vaccenic acid (C18:1 n-7), and reduced beta-sitosterol, and clerosterol, together with elevated stearic acid (C18:0), campesterol, stigmasterol, delta-7-stigmastenol, and delta-7-avenasterol.[11] Rather than being "characteristic of authentic avocado oil . . . this pattern is more consistent with substitution or dilution using vegetable oils."[12] Indeed, many of the avocado oil–labeled samples had fatty acid profiles that were more consistent with polyunsaturated vegetable oil compositions or comparative samples containing canola, corn, soybean, and/or sunflower oil, rather than authentic avocado oil.[13]

30. The UC Davis Study specifically investigated whether food processing (i.e., frying) could explain the deviations observed in inconsistent samples. To do this, the researchers made potato chips in the laboratory, fried them in authentic avocado oil, extracted the oil, and tested it again but the chemical fingerprint did not meaningfully change. Laboratory frying experiments demonstrated that processing causes only minor changes in key markers; cis-vaccenic acid decreased by only 0.1% during frying, thereby confirming that processing cannot explain the substantial compositional deviations observed in the inconsistent products.[14]

---

[10] *Id*. at 2-3.

[11] *Id*. at 1.

[12] *Id*. at 4.

[13] *Id*. at 6.

[14] *Id*. at 7.

31. All avocado oil products analyzed in the UC Davis Study listed avocado oil as the only oil used to make the product and did not disclose blended oil formulations.

32. Significantly, the UC Davis Study specifically tested Boulder Canyon brand products. Both samples of Boulder Canyon Classic Sea Salt Kettle Chips, labeled as made with avocado oil, were classified as not consistent with authentic avocado oil.[15] The UC Davis Study's findings demonstrate that the Boulder Canyon Avocado Oil chip products contain oils other than avocado oil, despite Defendants' representations that avocado oil is the one and only oil used.

### B. Independent Third-Party Testing Corroborates the UC Davis Study's Findings Regarding Boulder Canyon Avocado Oil Chip Products

33. In August 2026, Plaintiffs separately sent a total of six unopened bags of Boulder Canyon Avocado Oil chips to Isotek Laboratories, LLC ("**Isotek Labs**"), an AOCS[16]-certified independent testing laboratory located in Oklahoma City, Oklahoma, to conduct fatty acid profile analysis on samples of Boulder Canyon Avocado Oil chip products. Isotek Labs has "earned the trust of … industry leaders including JBS, Conagra, Smithfield Foods, Emery Oleochemicals, Sanimax, Scoular, Chevron, and ConocoPhillips."[17]

34. Ms. Clappa-Kales submitted four unopened bags of Boulder Canyon chips to Isotek Labs for testing: two bags of Avocado Oil Classic Sea Salt Kettle Chips, one bag of Avocado Oil Cheddar Sour Cream Chips, and one bag of Avocado Oil Hickory Barbecue Chips. Ms. Hasala

---

[15] *See id*. Supplementary tbl. S3 (fatty acid profiles); Supplementary tbl.S4 (sterol profiles).

[16] AOCS stands for the American Oil Chemists' Society. An AOCS-certified lab is a laboratory recognized by the American Oil Chemists' Society as competent in official AOCS test methods for fats, oils, oilseeds, and related products.

[17] Isotek Labs, *Company Profile*, https://isoteklabs.com/company-profile/ (last visited Aug. 31, 2026).

submitted two unopened bags of Boulder Canyon Avocado Oil Thin and Crispy Classic Sea Salt Chips to Isotek Labs for testing.

35. Isotek Labs performed fatty acid profile analysis on each sample using the AOCS Ce 1-62 analytical method, which is the same methodology recognized by the Codex Alimentarius international standards for determining fatty acid composition of edible oils. Like the UC Davis Study, the Isotek Labs analysis employed gas chromatography with flame ionization detection (GC-FID) to identify and quantify fatty acid methyl esters and compared the results against AOCS compositional ranges for authentic avocado oil. The samples were received on August 21, 2026, and the laboratory issued Certificates of Analysis for each sample on August 24-25, 2026.

36. The Isotek Labs testing results corroborate the UC Davis Study's findings that Boulder Canyon Avocado Oil chip products contain oils inconsistent with avocado oil. Analysis of the fatty acid profiles revealed that all six samples exhibited the same compositional anomalies identified in the UC Davis Study as indicators of adulteration or substitution with inferior vegetable oils.[18]

37. Specifically, the Isotek Labs testing revealed critically deficient levels of palmitoleic acid (C16:1) across all six Boulder Canyon samples. The Codex Alimentarius Commission, the FAO/WHO international food-standards body, lists a palmitoleic acid range of 4.0–17.1% for avocado oil. The AOCS reference range used by Isotek Labs is 3.0–9.0%. The Boulder Canyon samples tested at 0.67–0.97% palmitoleic acid—far below both ranges.

38. The Isotek Labs testing also revealed abnormally elevated levels of stearic acid (C18:0) in all six Boulder Canyon samples. The Codex Alimentarius Commission lists a stearic acid range of 0.1–1.3% for avocado oil. The AOCS reference range used by Isotek Labs is 0.4-

---

[18] *See* Lopez-Alvarez et al., *supra* note 3.

1%. The Boulder Canyon samples tested at 2.60% to 2.87%—again far outside the range of both the Codex and AOCS standards. As the UC Davis Study explained, elevated stearic acid, combined with reduced palmitoleic acid, is a compositional pattern "more consistent with substitution or dilution using vegetable oils" rather than authentic avocado oil.[19]

39. Additionally, the palmitic acid (C16:0) levels in the Boulder Canyon samples ranged from 7.78% to 9.49%. This is below the range for palmitic acid identified by Codex Alimentarius Commission (11.0-26.0%), and below, or at the very low end of the range, identified by AOCS (9.0-18%).

40. The Isotek Labs analysis further compared the Boulder Canyon sample results against the known fatty acid profiles of six different avocado cultivars (Hass, Fuerte, Bacon, Zutano, Reed, and Pinkerton). Even accounting for natural variability across avocado varieties, regions, and growing conditions, the palmitoleic acid and stearic acid levels in every Boulder Canyon sample fell outside the compositional ranges for every avocado cultivar.

41. The Isotek findings make clear that, if avocado oil is present in Boulder Canyon Avocado Oil chips, it is *not* the only oil. At a minimum, there is some other, inferior, oil in the chips. This conclusion is consistent with the UC Davis Study's finding that both Boulder Canyon Classic Sea Salt Kettle Chip samples tested by UC Davis were classified as "inconsistent with authentic avocado oil."[20] The independent Isotek Labs testing thus provides additional scientific confirmation that Defendants' Boulder Canyon Avocado Oil chip products contain oil(s) other than avocado oil, despite Defendants' representations to the contrary.

---

[19] Lopez-Alvarez et al., *supra* note 3 at 4.

[20] *See* Lopez-Alvarez et al., *supra* note 3 at 3 and 4 (Table 1).

### C. Boulder Canyon Avocado Oil Chip Product Labeling Represents to Consumers that Avocado Oil Was the One and Only Oil Used in the Chips

42. The front label of the Boulder Canyon Avocado Oil chip products prominently features the words "Avocado Oil" in large, conspicuous lettering or alongside a picture of an avocado. On the Classic Sea Salt Kettle Cooked Chips label, the words "AVOCADO OIL" are larger, and more prominent, than the flavor itself. While the design varies by flavor, the front label of each product clearly communicates to consumers that the chips are made with avocado oil, thereby distinguishing these products from conventional potato chips cooked in cheaper, lower quality, and less healthy oils.




**Figure 1.** Front label of Boulder Canyon Avocado Oil Classic Sea Salt Kettle Chips




**Figure 2.** Front label of Boulder Canyon Avocado Oil Wavy Sea Salt Chips




**Figure 3.** Front label of Boulder Canyon Avocado Oil Thin and Crispy Classic Sea Salt Chips

43. To the extent that any of the front labels leave any doubt as to whether avocado oil is the only oil, that ambiguity is eliminated by the ingredient list on the back label. The ingredient list identifies only potatoes, avocado oil, and sea salt (or a similarly simple ingredient list naming avocado oil as the sole oil). No other oils are disclosed in the ingredient list.




**INGREDIENTS: POTATOES, AVOCADO OIL, SEA SALT.**

**Figure 4.** Back label of Boulder Canyon Avocado Oil Classic Sea Salt Kettle Chips




**Figure 5.** Back label of Boulder Canyon Avocado Oil Wavy Sea Salt Chips




**INGREDIENTS: POTATOES, AVOCADO OIL, SEA SALT.**

**Figure 6.** Back label of Boulder Canyon Avocado Oil Thin and Crispy Classic Sea Salt Chips

44. Defendants' marketing materials, including their website and promotional materials, describe Boulder Canyon chips as made with "premium oils like avocado and olive" and advertise the products as "cooked in 100% avocado oil."[21] These representations are consistent with the impression conveyed by the product labeling that avocado oil was the one and only oil used in the making of the chips.

45. Based on Defendants' representations—including the prominent reference to avocado oil on the front label and the ingredient list on the back that lists as avocado oil as the only oil in the product—reasonable consumers, including Plaintiffs and Class members, understand and expect that Boulder Canyon Avocado Oil chips are cooked solely in avocado oil and contain no other oils.

### D. Consumer Motivation: Health Concerns with Inferior Vegetable and Seed Oils and the Perceived Benefits of Avocado Oil

46. Avocado oil is a premium cooking oil that is significantly more expensive than common refined oils such as canola oil, sunflower oil, soybean oil, and corn oil. Consumers deliberately choose to pay a premium price for avocado oil products because avocado oil is perceived as healthier, more natural, and of higher quality than seed oils. They also do so to avoid the consumption of inferior vegetable oils, like soybean oil, and seed oils, including canola oil, sunflower oil, safflower oil, and corn oil, and the negative health effects associated with these oils' consumption. Thus, consumers rely on product labeling when they deliberately choose to pay more for a product because the label specifically says it is made with avocado oil.

47. This consumer motivation is a central reason why Boulder Canyon Avocado Oil products command a premium price and why Defendants prominently market these products as

---

[21] *Boulder Canyon*, Utz Quality Foods, https://www.utzsnacks.com/collections/boulder-canyon (last visited Aug. 31, 2026).

made with avocado oil. Market research confirms this trend: as of 2024, over 42% of consumers in the United States reported switching from conventional oils to healthy, plant-based alternatives like avocado oil, driven by consumer awareness of its superior properties.[22] The global avocado oil market was valued at approximately $637 million in 2024 and is projected to reach over $1.1 billion by 2032, reflecting a compound annual growth rate of 6.0%.[23]

**E. Defendants' Knowledge and Intent**

48. Defendants knew or should have known that their Boulder Canyon Avocado Oil chip products contained oils other than avocado oil. As the manufacturers of these products, Defendants have direct knowledge of and control over the ingredients used in their manufacturing process.

49. Defendants knew or should have known that their labeling representations, including the prominent "Avocado Oil" designations on the front, and the ingredient list on the back declaring avocado oil as the only oil in the product, were false and misleading.

50. Defendants intentionally chose to label their products as avocado oil chips and to charge a premium price based on this premium characteristic. Defendants did so because they knew that consumers would pay more for products they believed were made solely with premium avocado oil.

51. Defendants are no doubt aware that consumer preference for avocado oil is also driven by "clean label" trends and the growing consumer demand for foods made with natural,

---

[22] *Avocado Oil Market Size, Share, Growth, and Industry Analysis, By Type*, Market Reports World, https://www.marketreportsworld.com/market-reports/avocado-oil-market-14716152 (last visited August 31, 2026).

[23] *Global Avocado Oil Market Size, Share, and Trends Analysis Report – Industry Overview and Forecast to 2032*, Data Bridge Mkt. Rsch., https://www.databridgemarketresearch.com/reports/global-avocado-oil-market (last visited August 31, 2026).

minimally processed, and transparently sourced ingredients. Market research confirms that "[r]ising demand for clean-label nutrition, premium culinary ingredients, and natural formulation inputs accelerates adoption of avocado oil across food manufacturing, retail consumption, and cosmetic innovation."[24] Consumers "increasingly evaluate nutritional value, ingredient transparency, and cooking performance," and avocado oil "is emerging as a preferred solution" because its nutritional profile "aligns with dietary preferences focused on heart health and natural nutrition."[25] "Health-focused consumers increasingly seek cooking oils rich in monounsaturated fats and antioxidants, while food companies leverage avocado oil to develop premium products that meet modern dietary expectations."[26]

52. Products labeled with avocado oil command a significant price premium over comparable products formulated with seed oils. The UC Davis Study found that chips labeled with avocado oil ranged from $0.30 to $2.00 per ounce, compared with $0.44 to $0.62 per ounce for vegetable oil chips, reflecting premiums of up to 222% for avocado oil–labeled products.[27] Similarly, avocado oil mayonnaise ranged from $0.30 to $1.63 per ounce, compared with $0.24 to $0.75 for vegetable oil mayonnaise.[28] These price premiums reflect consumer willingness to pay more for products labeled as made with avocado oil that they reasonably believe contain authentic avocado oil and its associated health benefits. However, the UC Davis researchers noted that "retail

---

[24] *Growing Demand for Clean-Label Cooking Oils Accelerates the Global Avocado Oil Market*, PR Newswire (Jan. 2026), https://www.prnewswire.co.uk/news-releases/growing-demand-for-clean-label-cooking-oils-accelerates-the-global-avocado-oil-market--future-market-insights-302708127.html.

[25] *Id.*

[26] *Id.*

[27] *See* Lopez-Alvarez et al., *supra* note 3 at 4.

[28] *Id.*

price alone was not a reliable indicator of ingredient authenticity and consumers cannot rely on price alone as an indicator of authenticity."[29] Defendants, as a market participant selling avocado oil products at premium prices, knew or should have known that consumers purchasing such products reasonably expected that avocado oil was the one and only oil used in their chips and relied on Defendants' labeling to deliver that expectation.

53. Defendants' false and misleading labeling and marketing was designed to, and did, induce consumers, including Plaintiffs and Class members, to purchase the Boulder Canyon Avocado Oil chip products and to pay a premium price for those products based on the false belief that they would enjoy the benefits of chips cooked solely in avocado oil.

## CLASS ALLEGATIONS

54. Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiffs bring this action on behalf of the following putative class (hereafter, "**Class**"): All persons in Arizona, California, Connecticut, Florida, Hawaii, Idaho, Illinois, Massachusetts, Minnesota, Missouri, New Jersey, New York, Virginia, Washington State, and Washington D.C., who purchased Boulder Canyon Avocado Oil chip products within the applicable statutes of limitation.

55. Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers, and directors; those who purchased Boulder Canyon Avocado Oil chip products for resale; those who make a timely election to be excluded from the Class; and the judge to whom the case is assigned and any immediate family members thereof.

56. The Class Period begins on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, knowing concealment, and accrual issues, and ends on the date of entry of judgment.

[29] *Id*.

57. Plaintiffs reserve the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

58. **Numerosity**: The members of the Class are so numerous that joinder of all class members is impracticable. On information and belief, there are, at a minimum, hundreds of thousands of Class Members who purchased Boulder Canyon Avocado Oil chip products during the Class Period. Boulder Canyon Avocado Oil chips are sold at major grocery stores, big-box retailers, natural food stores, and online retailers throughout the United States. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

59. **Predominance of Common Questions of Law and Fact**: Questions of law and fact that are common to the members of the Class predominate over questions that are specific to individual members. These common questions of law and fact include, but are not limited to, the following:

a. Whether Defendants' labeling of Boulder Canyon Avocado Oil chip products as being made with avocado oil, and only avocado oil, is false and/or misleading;

b. Whether Defendants' Boulder Canyon Avocado Oil chip products contain oils other than avocado oil, including inferior vegetable and/or seed oils;

c. Whether Defendants knew or should have known that their product labeling is false and/or misleading;

d. Whether Defendants' conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act and other analogous state consumer protection laws;

e. Whether Defendants were unjustly enriched;

f. Whether Plaintiffs and Class members have suffered an ascertainable loss of monies or property or other value as a result of Defendants' deceptive and unlawful conduct; and

g. Whether Plaintiffs and Class members are entitled to relief and, if so, the nature of such relief.

60. The consumer protection laws in the putative Class are materially identical with respect to the causes of action for deceptive trade practices alleged herein. Thus, the same deceptive conduct by Defendants that violates Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq*., simultaneously violates the consumer protection laws of the other identified states.

61. **Typicality**: Plaintiffs' claims are typical of those of other Class Members because, like all members of the Class, Plaintiffs purchased Boulder Canyon Avocado Oil chip products bearing the same false and misleading labeling and relied on the same material misrepresentations regarding the oil content of those products.

62. **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel that is experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the Class. Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

63. **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy for the following reasons:

h. The economic loss suffered by each individual member of the Class does not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

i. Even if individual members of the Class had the resources to pursue individual litigation, it would pose a crushing burden on the court system for these cases to be litigated on an individual basis;

j. Absent a class action mechanism, Plaintiffs and Class members will continue to suffer harm as a result of Defendants' unlawful conduct because individual litigation is wholly impractical and cost prohibitive; and

k. This action presents no difficulty that would impede its management by the Court as a class action.

## FIRST CAUSE OF ACTION

**False Pretenses, Promises, and Misrepresentations in Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1, et seq.**

(On Behalf of the Illinois Subclass)

64. Plaintiffs incorporate the preceding paragraphs as if fully written herein.

65. Plaintiffs bring this claim individually and on behalf of the Illinois members of the Class.

66. Plaintiffs and other Class members are persons within the context of the Illinois Consumer Fraud and Deceptive Business Practices Act ("**ICFA**"), 815 ILCS 505/1, et seq.

67. Defendants are persons within the context of the ICFA, 815 ILCS § 505/1(c).

68. At all times relevant hereto, Defendants were engaged in trade or commerce as defined under the ICFA, 815 ILCS § 505/1(f).

69. Plaintiffs and Class members are "consumers" who purchased the Boulder Canyon

Avocado Oil chips for personal, family, or household use within the meaning of the ICFA, 815 ILCS § 505/1(e).

70. The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices," which includes "the use or employment of any . . . false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2.

71. A "claim for 'deceptive' business practices under the [ICFA] does not require proof of intent to deceive." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) (citation omitted). Defendants, however, must intend for consumers to rely on the aspects of the labeling that are alleged to be deceptive.

72. As with other sophisticated corporate entities, Defendants intentionally design the packaging and labeling of Boulder Canyon Avocado Oil chip products, including the false and deceptive elements described in paragraphs 42 to 53 to entice the target audience to purchase said products.

73. Defendants' labeling of their Boulder Canyon Avocado Oil chip products is deceptive in that it conveys that the chips are made using avocado oil, and only avocado oil. This is false and misleading because the UC Davis Study and independent third-party testing show that, if avocado oil is even present in the chips, it is *not* the only oil. The other oil(s) present in the product are *not* disclosed on the label. The label thus simultaneously provides the false impression that avocado oil is the only oil, while concealing/suppressing that other, inferior, oils are present.

74. Defendants intend for consumers to rely on the label's false pretenses, false promises, misrepresentation, and concealment, whether or not they know these are false and/or misleading.

75. Reasonable consumers, including Plaintiffs and Class Members, rely and act upon said false and misleading representations.

76. Plaintiffs and Class Members relied on Defendants' deceptive labeling and suffered economic loss as a proximate result. Specifically, Defendants' deceptive labeling caused Plaintiffs and Class Members to (i) purchase products they never would have purchased absent the deception (i.e., Plaintiffs would not have purchased the products had they known that avocado oil was not the one and only oil used in the chips), and (ii) pay more on the products than they would have paid absent the deception.

77. Through said violations of the ICFA, Defendants have been unjustly enriched, and continue to be unjustly enriched, by unfairly obtaining money from members of the Class.

78. Based on Defendants' deceptive acts and practices, Plaintiffs and the Illinois Class members are entitled to relief under 815 ILCS §505/10a.

## SECOND CAUSE OF ACTION
**Deceptive Business Practices in Violation of Other Similar State Statutes Identified Herein**
(On Behalf of the Multi-State Class)

79. Plaintiffs incorporate the preceding paragraphs as if fully written herein.

80. Plaintiffs bring this claim on behalf of the Arizona, California, Connecticut, Florida, Hawaii, Idaho, Massachusetts, Minnesota, Missouri, New Jersey, New York, Virginia, Washington State, and Washington D.C. members of the proposed Multi-State Class.

81. As described above, including but not limited to paragraphs 42 to 53, Defendants have engaged in deceptive practices in their labeling, marketing, and sale of Boulder Canyon Avocado Oil chip products. Through these deceptive practices, Defendants represent that Boulder Canyon Avocado Oil chips are made with avocado oil, and only avocado oil. This is false and misleading because the UC Davis Study and independent third-party testing show that, if avocado

oil is even present in the chips, it is *not* the only oil. The other oil(s) present in the product are *not* disclosed on the label. The label thus simultaneously provides the false impression that avocado oil is the only oil, while concealing/suppressing that other, inferior, oils are present.

82. Through this deceptive conduct, which violated, and continues to violate, the ICFA (815 ILCS 505/2), Defendants have simultaneously violated, and continue to violate, the following state consumer protection statutes:

a. Arizona (A.R.S. § 44-1521, et seq.);

b. California (Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Bus. & Prof. Code § 17500 et seq.; & Cal. Civ. Code § 1750, et seq.);

c. Connecticut (Conn. Gen. Stat. § 42-110a, et seq.);

d. Florida (Fla. Stat. § 501.201, et seq.);

e. Hawaii (HRS § 481A-1, et seq.);

f. Idaho (Idaho Code § 48-601, et seq.);

g. Massachusetts (Mass. Gen. Laws ch. 93A);

h. Minnesota (Minn. Stat. § 325F.68, et seq.);

i. Missouri (Mo. Rev. Stat. § 407.005, et seq.);

j. New Jersey (N.J.S.A. § 56:8-1, et seq.);

k. New York (NY GBL §§ 349-50);

l. Virginia (Va. Code Ann. § 59.1-196, et seq.);

m. Washington (Wash. Rev. Code § 19.86.010, et seq.); and

n. Washington D.C. (D.C. Code § 28-3904, et seq.).

83. Defendants intend for consumers to rely on these false pretenses, promises, and misrepresentations, whether or not Defendants actually know these representations are false and/or misleading.

84. Reasonable consumers rely and act upon said false and misleading representations.

85. Plaintiffs and Class Members relied on Defendants' deceptive labeling and suffered economic harm as a proximate result of this reliance. Specifically, Defendants' deceptive conduct caused Plaintiffs and Class Members to: (i) purchase products they never would have purchased absent the deception (i.e., Plaintiffs would not have purchased the products had they known that avocado oil was not the one and only oil used in the chips), and (ii) pay more for the products than they would have paid absent the deception.

86. Through their deceptive acts and practices, Defendants have been unjustly enriched, and continue to be unjustly enriched, by unfairly obtaining money from members of the Class.

87. Based on Defendants' deceptive acts and practices, Plaintiffs and the Class members are entitled to relief under the aforementioned state statutes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgment against Defendants as follows:

A. Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class counsel and Plaintiffs as Class Representatives;

B. An award of compensatory damages in an amount to be determined at trial;

C. An award of restitution and/or disgorgement in an amount to be determined at trial, except as to those causes of action where restitution/disgorgement is not available by law;

D. An award of statutory damages in an amount to be determined at trial, except as to those causes of action where statutory damages are not available by law;

E. An award of treble damages, except as to those causes of action where treble damages are not available by law;

F. An award of punitive damages in an amount to be determined at trial, except as to those causes of action where punitive damages are not available by law;

G. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

H. For reasonable attorneys' fees and the costs of suit incurred; and

I. For such further relief, including but not limited to declaratory and injunctive relief, as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all Counts and as to all issues.

Dated: August 31, 2026

Respectfully Submitted,

**SIRI & GLIMSTAD LLP**

By: *<u>/s/ Michael Connett</u>*
Michael Connett
Catherine Ybarra
(general bar admission to be sought)
700 S. Flower St., Suite 1000
Los Angeles, CA 90017
mconnett@sirillp.com
cybarra@sirillp.com
Tel: (888) 747-4529

Elizabeth A. Brehm
745 Fifth Avenue, Suite 500
New York, NY 10151
ebrehm@sirillp.com
Tel: (888) 747-4529

*Attorneys for Plaintiffs and Putative Class*